OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court
of Ohio are being transmitted electronically beginning May
27, 1992, pursuant to a pilot project implemented by Chief
Justice Thomas J. Moyer.
     Please call any errors to the attention of the
Reporter's Office of the Supreme Court of Ohio.
Attention:  Walter S. Kobalka, Reporter, or Deborah J.
Barrett, Administrative Assistant.  Tel.:  (614) 466-4961;
in Ohio 1-800-826-9010.  Your comments on this pilot
project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court
to the full texts of the opinions after they have been
released electronically to the public.  The reader is
therefore advised to check the bound volumes of Ohio St.3d
published by West Publishing Company for the final
versions of these opinions.  The advance sheets to Ohio
St.3d will also contain the volume and page numbers where
the opinions will be found in the bound volumes of the
Ohio Official Reports.

Fabe, Superintendent of Insurance, Appellant, v. Prompt
Finance, Inc., Appellee.
     [Cite as Fabe v. Prompt Finance, Inc. (1994),
Ohio St.3d     .]
Insurance -- Superintendent of Insurance has authority to
     issue an order placing an insurer under supervision
     -- R.C. 3903.09(C)(5), construed and applied -- Court
     of common pleas has authority to issue a ruling which
     is "necessary and proper" to enforce an order of the
     Superintendent of Insurance -- R.C. 3903.09(I).
                         ---
1.   To protect the interests of policyholders, creditors,
     claimants, and the public generally, the
     Superintendent of Insurance has the authority to
     issue an order placing an insurer under supervision.
     An order of the Superintendent may require an insurer
     to obtain approval from the Superintendent prior to
     the transfer of any of the insurer's property.  (R.C.
     3903.09[C][5], construed and applied.)
2.   Pursuant to R.C. 3903.09(I), a court of common pleas
     has the authority to issue a ruling which is
     "necessary and proper" to enforce an order of the
     Superintendent of Insurance.
                         ---
     (No. 93-274 -- Submitted February 22, 1994 -- Decided
May 11, 1994.)
     Appeal from the Court of Appeals for Franklin County,
No. 91AP-1347.
     This case involves a complex scheme of numerous
interrelated domestic and international corporate
entities.  However, the main focus of this appeal concerns
the interrelationship and involvement between only two of
the entities, Prompt Finance, Inc. ("Prompt"), appellee,
and the Oil & Gas Insurance Company ("OGICO").  Prompt is
a corporation engaged in the business of financing
insurance premiums.1  OGICO is an Ohio-licensed property

and casualty insurance company which primarily insures oil and gas related activities.

Affiliates of OGICO are Petrosurance Casualty Company, Millers National Insurance Company and the Illinois Insurance Company (collectively referred to as "OGICO").2  OGICO's parent company is Petrosurance Incorporated, a subsidiary of Forum Holdings U.S.A., Inc. Forum Holdings U.S.A., Inc. is a subsidiary of Forum Re Group, Inc., a.k.a. The Group, Inc.  Prior to December 29, 1989, Prompt's sole shareholder was Forum Re Finance Corporation, which was owned by Forum Holdings U.S.A., Inc.

A common connection between Prompt and OGICO, their affiliates and parent companies, is interlocking directorates and/or officers.  Some of the key persons reflecting the integration of the various entities are Clive Becker-Jones, Eric N. Wickfield and Mark G. Hardy. Becker-Jones is president and a director of the OGICO group companies, including OGICO's parent company, Petrosurance Incorporated.  He is also president and a director of Forum Holdings U.S.A., Inc. and Forum Re Group, Inc.  Prior to December 1989, Becker-Jones assisted Wickfield and was actively involved in the day-to-day operations of Prompt.  Wickfield is president and a director of Prompt.  He is also vice president of Forum Holdings U.S.A., Inc.  Hardy also wore many hats.  He is a director of OGICO and a director of Petrosurance Incorporated.  Hardy is also a director of Forum Holdings U.S.A., Inc., and the chief executive officer and a director of Forum Re Group, Inc.  Further, Hardy is a director of Prompt.  In addition, many of the related companies share a common vice president, treasurer, secretary and assistant secretary.  In any event, it is apparent from the record that all related corporate entities come under the ultimate control of Hardy.

In 1988, Prompt decided to obtain additional capital to enhance its premium financing operation.  After exhausting loans from various affiliates, Prompt, through Hardy and Wickfield, sought the services of Close Brothers Group PLC ("Close Brothers"), a British merchant bank. Close Brothers initially loaned Prompt $1 million.  This loan was secured by Hardy.  Further, as a condition of Prompt's securing an additional line of credit from a corresponding bank, Close Brothers required that Prompt obtain a guaranty arrangement.

On December 29, 1989, Forum Re Group, Inc., Forum Re Finance Corporation and the OGICO group (collectively known as the "guarantors") and Prompt entered into a guaranty agreement.  Pursuant to the terms of the agreement, the guarantors jointly and severally guaranteed "full and punctual payment when due" of any obligation owed by them to Prompt.  The agreement also provided for the payment of Prompt's legal fees with respect to the enforcement of any obligation owed by the guarantors to Prompt.  The guaranty agreement was secured by a letter of credit issued by Society National Bank ("Society") in favor of Prompt.  The letter of credit authorized Prompt

to draw up to $1 million by draft for the failure of the guarantors, individually or collectively, to abide by the terms of the guaranty agreement. Hardy signed the guaranty agreement on behalf of Forum Re Group, Inc. and Forum Re Finance Corporation. Wickfield signed for Prompt and Becker-Jones signed the guaranty agreement on behalf of the companies consisting of the OGICO group.

To obtain the letter of credit, OGICO was required to pay a $1 million debt owed by Petrosurance Incorporated, pay a $10,000 fee, execute a promissory note and pledge approximately $1 million in marketable securities as collateral. The guaranty agreement was negotiated in connection with the purchase of fifty percent of the stock of Prompt by Close Brothers. The involvement of Close Brothers resulted in a contribution of capital to Prompt, a revolving credit facility in favor of Prompt, and the payoff by Prompt of various of its outstanding loans.

Subsequent to Close Brothers' obtaining an interest in Prompt, OGICO filed a financial statement with the Ohio Department of Insurance ("ODI"). ODI reviewed OGICO's financial status and determined that the company was in a financially hazardous condition. Thus, on March 22, 1990, the Superintendent of Insurance ("Superintendent"), appellant, issued an order placing OGICO under supervision. The order provided, among other things, that OGICO was prohibited from transferring any of its property without first obtaining written approval from the Superintendent.

Following the March 22, 1990 order, representatives of ODI and others met with Becker-Jones and Hardy. During this meeting, Hardy refused to produce certain records requested by ODI. ODI also informed Becker-Jones and Hardy that OGICO needed additional amounts of cash to meet certain statutory minimum surplus requirements.

While under supervision, OGICO directed Prompt to pay, out of remittances Prompt was holding for OGICO, aviation expenses apparently due from OGICO to yet another affiliate, Phorum Re Investment Corporation ("Phorum Re"). Phorum Re received three checks from Prompt totalling $215,460.69. These payments were made on OGICO's behalf pursuant to a "memorandum of understanding" between Prompt and OGICO. The payments were made in violation of the March 22, 1990 supervision order.

The Superintendent decided to take OGICO beyond supervision and into rehabilitation. Accordingly, on May 4, 1990, the Superintendent filed a complaint for rehabilitation in the Court of Common Pleas of Franklin County. Four days later, various officers and/or directors of Prompt discussed financial problems associated with OGICO. Further, prior to this meeting, Close Brothers, also a member of Prompt's board by virtue of its fifty percent ownership interest in Prompt, discussed these problems with Hardy. The managing director of Close Brothers stated that his banking group consulted with Hardy because he "* * * was also a director of Prompt and was obviously intimately involved with the general management of Forum and its insurance companies *

* *."

On May 16, 1990 a rehabilitation order was entered by the trial court. Thereafter, Prompt's board of directors authorized Wickfield to draw $1 million from Society. The $1 million draft from Society was authorized by Prompt in response to an unearned premium balance on cancelled policies owed to Prompt from OGICO in the amount of $45,000.

On May 17, 1990, the Superintendent, to protect OGICO's assets, moved the trial court for a temporary restraining order and preliminary injunction. The Superintendent sought to enjoin any action by Prompt or Society with respect to the letter of credit. The trial court granted the Superintendent's motion. Thereafter, on May 30, 1990, OGICO, through its rehabilitator, the Superintendent, filed a complaint against Prompt and Society for possession of assets. OGICO requested that the trial court determine the validity and enforceability of the guaranty agreement, the effect of the agreement on the letter of credit, and direct an accounting of any amounts owed by OGICO to Prompt. The trial court continued the temporary restraining order, consolidated the matters at issue and set the case for hearing. Furthermore, the Superintendent, prior to the hearing, amended his complaint. The Superintendent claimed that Prompt owed money to OGICO for certain premiums financed by Prompt. In response, Prompt filed an answer and counterclaim. Prompt urged that OGICO failed to remit unearned premiums on various cancelled policies.

On October 2, 1990, the trial court issued its findings of fact and conclusions of law and, subsequently, issued a judgment entry and an entry directing that an accounting be made between the parties. The trial court concluded that the guaranty agreement, as secured by the letter of credit, was not supported by an exchange of "fair equivalent value." The trial court determined that OGICO received disproportionately less value than the obligation it incurred since any default in any amount to Prompt, either by OGICO or the other guarantors, would result in Prompt receiving up to $1 million and OGICO's reimbursing Society out of OGICO's collateralized securities. Thus, concluded the court, the guaranty agreement and the letter of credit should extend only to the direct obligations of OGICO to Prompt rather than obligations, if any, of the other guarantors. This being the case, Prompt would only be entitled to draw the amount of unearned premiums owing from OGICO to Prompt and not the entire $1 million.

The trial court further held that the payment of aviation expenses to Phorum Re by Prompt out of funds held by Prompt for OGICO constituted "* * * attempts indirectly to do that which was directly prohibited * * *" by the supervision order. As such, the trial court found that the payments made by Prompt to Phorum Re at the direction of OGICO could not be deducted (set off) from the gross amount of remittances Prompt had been holding for OGICO. The court ordered an accounting between the parties, and

further held that Society could liquidate any securities held as collateral for fees and expenses incurred by Society with respect to the letter of credit.

The court of appeals reversed the judgment of the trial court and remanded the cause. The court of appeals concluded that the guaranty agreement was supported by sufficient consideration and that the agreement and letter of credit represented an exchange of "fair equivalent value" between OGICO and Prompt. The court also held that the trial court erred in charging Prompt with a violation of the Superintendent's March 22, 1990 order without first determining whether Prompt had knowledge of the terms of the supervision order.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Lee I. Fisher, Attorney General; Emens, Kegler, Brown, Hill & Ritter Co., William J. Brown, John P. Brody, Richard W. Schuermann and Paul L. Hokemeyer, for appellant.

Jones, Day, Reavis & Pogue, Fordhan E. Huffman and Sara M. Allswede, for appellee.

Douglas, J.     This appeal presents two questions for our consideration. The first issue concerns the authority of the Superintendent to prohibit transfers of property where the transfer would be in violation of a supervision order, and the authority of a court of common pleas to issue a ruling necessary to enforce an order of the Superintendent. The second question is whether the trial court erred in concluding that the guaranty agreement, as secured by the letter of credit, was supported by adequate consideration.

I

R.C. Chapter 3903 is referred to as "'the insurers supervision, rehabilitation, and liquidation act.'" R.C. 3903.02(A). If the Superintendent has reasonable cause to believe that the continuance of an insurer's business could be hazardous "to the public or to the holders of its policies or certificates of insurance," the Superintendent may order that the insurer be placed under supervision. R.C. 3903.09(B) and (C). Further, the Superintendent may, under certain circumstances, file a complaint in the court of common pleas for an order authorizing the rehabilitation of an insurance company. R.C. 3903.12. See, also, R.C. 3903.09(D). However, if the Superintendent determines that rehabilitation of an insurer "would substantially increase the risk of loss to creditors, policyholders, or the public, or would be futile," the Superintendent may file a motion with the trial court for an order of liquidation. R.C. 3903.16(A).3

The General Assembly enacted R.C. Chapter 3903 for the specific purpose of protecting "the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers * * *." R.C. 3903.02(D). See, also, Anderson v. Ohio Dept. of Ins. (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042, paragraph two

of the syllabus, wherein a majority of this court held, in part, that R.C. Chapter 3903 was enacted for the benefit of the "general citizenry." Moreover, to ensure that the purpose of the act is effectuated, R.C. 3903.02(C) sets forth that the provisions of R.C. Chapter 3903 are to be liberally construed.

The Superintendent contends that explicit statutory authority exists to prohibit the transfer of payments ($215,460.69) from Prompt to Phorum Re. The Superintendent asserts that the transfers were executed in violation of the March 22, 1990 supervision order and, consequently, the trial court properly concluded that Prompt could not offset the payments against any indebtedness of Prompt due OGICO. In support of his position, appellant relies on R.C. 3903.05, 3903.09(C) and (I).

The General Assembly has conferred upon the Superintendent and a trial court broad discretionary and equitable powers relating to the supervision, rehabilitation and liquidation of insurance companies. R.C. 3903.09(C)(5) provides that an insurer who has been placed under supervision may be prohibited from transferring any property absent prior approval of the Superintendent. Further, the Superintendent may file a complaint or move the trial court to issue a temporary restraining order, preliminary or permanent injunction or "such other orders as the court considers necessary and proper to enforce a supervision order." (Emphasis added.) R.C. 3903.05(A). R.C. 3903.05 also gives a court of general jurisdiction a broad spectrum of powers. R.C. 3903.05(A) provides that a trial court, upon motion of a receiver, conservator, rehabilitator or liquidator, may issue an order which the court considers "necessary and proper" to prevent, inter alia, the transaction of further business; the transfer of property; the interference with the receiver, conservator, rehabilitator, liquidator or any proceeding under R.C. Chapter 3903; the obtaining of preferences; and "[a]ny other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders * * *." See R.C. 3903.05(A)(1), (2), (3), (7) and (11).

In the case at bar, payments totalling $215,460.69 were made by Prompt to Phorum Re at the direction of OGICO. The payments were made after OGICO had been placed under supervision. OGICO, Prompt and Phorum Re are closely connected companies. The record indicates that Prompt owed money to OGICO for premiums Prompt had financed, that OGICO owed money to Prompt for unearned premiums on cancelled policies, and that OGICO was indebted to Phorum Re for aviation expenses. Further, the payments to Phorum Re by Prompt were made in accordance with a "memorandum of understanding" between OGICO and Prompt. The memorandum provided "* * * that any and all transfers that PROMPT makes to Phorum [Re] on OGICO's behalf releases PROMPT from that same liability to OGICO and that PROMPT's payment to Phorum [Re] shall be

construed to be the same as a payment to OGICO from PROMPT."

The trial court held, and we agree, that the transfer of payments made by Prompt to Phorum Re on behalf of OGICO violated the Superintendent's March 22, 1990 order. We further agree with the trial court that the transfer of payments were "attempts indirectly to do that which was directly prohibited" by the supervision order and, therefore, Prompt may not offset monies which it may owe OGICO.

The court of appeals found that Becker-Jones had knowledge OGICO was under supervision and that he promptly informed Wickfield of OGICO's status. The appellate court also found that Prompt's vice president was aware OGICO was under supervision. The court of appeals agreed that the payments by Prompt to Phorum Re totalling $215,460.69 violated the supervision order. However, the court of appeals concluded that the trial court erred in holding that payments to Phorum Re by Prompt on OGICO's behalf were attempts to circumvent the supervision order. The court of appeals held that before such a conclusion can be reached, the trial court must determine whether Prompt had knowledge of the contents of the March 22, 1990 supervision order, which precluded any transfers of property absent prior approval by the Superintendent. Prompt agrees with the court of appeals' conclusion and urges that the Superintendent's exclusive remedy is set forth in R.C. 3903.09(J). We disagree.

R.C. 3903.09(J) provides that any person, including those described in R.C. 3903.06(A), who knowingly violates an order of the Superintendent thereby resulting in a decrease in the net worth of an insurer or causes the insurer to suffer a loss may be liable for such decrease or loss. This section provides the Superintendent with a civil cause of action for damages against those who knowingly violate an order of the Superintendent. However, this section is clearly not the only remedy available to the Superintendent. To hold otherwise would be to ignore additional rights given to the Superintendent by law. Most notably, R.C. 3903.09(I) provides that the Superintendent may move the trial court for such order that "* * * the court considers necessary and proper to enforce a supervision order." (Emphasis added.)

Given the inexorably intertwined relationship between Prompt and OGICO and the directors and officers involved, even assuming that R.C. 3903.09(J) provides the exclusive remedy available to the Superintendent, it cannot be seriously argued that Prompt did not have sufficient knowledge so as to comply with R.C. 3903.09(J). Wickfield, Prompt's president, was aware that OGICO was under supervision. Prompt's vice president was also aware of OGICO's status. Becker-Jones also had knowledge of the order. Further, it is apparent that Hardy, a director of Prompt and OGICO, was also intimately involved in the management of OGICO and other related affiliates. Moreover, at oral argument, counsel for Prompt conceded that Hardy was aware of the March 22, 1990 order.

The statutory scheme of R.C. Chapter 3903 is intended to protect the rights of insureds, policyholders, creditors, and the public generally. The Act was not intended to protect an insider affiliate such as Prompt. Accordingly, we hold that to protect the interests of policyholders, creditors, claimants, and the public generally, the Superintendent of Insurance has the authority to issue an order placing an insurer under supervision. An order of the Superintendent may require an insurer to obtain approval from the Superintendent prior to the transfer of any of the insurer's property. Further, pursuant to R.C. 3903.09(I), a court of common pleas has the authority to issue a ruling which is "necessary and proper" to enforce an order of the Superintendent of Insurance.

II

The Superintendent contends, and the trial court held, that the guaranty agreement, as secured by the letter of credit, was not supported by fair consideration. The trial court concluded that the agreement and letter of credit, when viewed under the totality of the circumstances, did not constitute an exchange of fair equivalent value between OGICO and Prompt. An exchange of fair equivalent value was not present, reasoned the trial court, because OGICO received disproportionately less value than the obligation it incurred.

R.C. 3903.26(A) provides, in part, that every transfer or obligation incurred by an insurer within one year of the filing of a successful complaint for rehabilitation or liquidation is fraudulent as to then existing or future creditors if made without fair consideration. R.C. 3903.01(H) provides that:

"'Fair consideration' is given for property or obligation when either of the following apply:

"(1) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed, services are rendered, an obligation is incurred, or an antecedent debt is satisfied;

"(2) When such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained." (Emphasis added.)

The court of appeals held that the trial court did not apply R.C. 3903.26(A) and 3903.01(H) correctly when it determined whether fair equivalent value was exchanged between OGICO and Prompt. In reaching this conclusion, the court of appeals stated that "[f]air equivalent value does not necessarily mean equal value, and the court must look at the total circumstances involved in the transaction. What is exchanged does not have to be equal, but can be substantially equivalent as long as what is exchanged is not disproportionately small." (Emphasis sic.)

In Myers v. Garson (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745, we recently reaffirmed that: "[W]here

the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Having reviewed the entire record in the instant case, we find that there exists competent and credible evidence supporting the findings of fact and conclusions of law of the trial court.

We agree with the trial court that the major benefactor of the guaranty agreement was Prompt. The guaranty agreement and letter of credit were a condition precedent to Close Brothers' obtaining a fifty percent ownership interest in Prompt. As a result of Close Brothers' participation, Prompt was able to obtain a beneficial infusion of capital, a revolving credit facility, and the ability to pay off certain of its outstanding loans. In contrast, OGICO was required to pay a $1 million debt owed by its parent company, pay a $10,000 fee and pledge approximately $1 million in assets. The trial court noted that in exchange for signing the guaranty agreement, OGICO simply received more accessible premium financing. It appears that OGICO already had existing opportunities available to it from other companies for financing insurance premiums. Hence, it is apparent that the court of appeals impermissibly substituted its judgment for that of the trial court.

### III

For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court in all respects.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTES:

1 The concept of premium financing involves the financing of an insurance policy. There is a contractual or established relationship between an insurance company and a financing entity. In general terms, the financing company advances the amount of premium owed by the insured to the insurer. The insured, which has given the financing company a substantial down payment, then pays the financing company the remainder of the premium in installments. However, if the insured's policy is cancelled, the insurer is required to remit any unearned premium to the financing company which then reimburses the insured for any amount that may be owed it.

2 The OGICO group companies had been for a certain period of time operating on a "pooled" arrangement whereby all day-to-day business operations were conducted out of OGICO's main office. Further, OGICO was considered the controlling company for the pooled arrangement. Moreover, it appears that employees responsible for the management of the OGICO group were located at the same address as that of Prompt.

3 On August 31, 1990, OGICO was found to be insolvent and placed in liquidation.